## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 07 B 15826 |
| | ) | |
| SHREE ROYAL, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Pamela S. Hollis |

### MEMORANDUM OPINION

This matter comes before the court on the Objection to Claim of Exemption filed by Marilyn O. Marshall, the Chapter 13 Trustee, objecting to Shree Royal's claimed exemption in her anticipated earned income tax credit. The Trustee also raised an oral objection to confirmation of Royal's plan on the grounds that by excluding future earned income tax credits, Royal is not committing all projected disposable income to her plan. For the reasons stated below, the court sustains the oral objection to confirmation and overrules the Objection to Claim of Exemption.

### BACKGROUND

Debtor Shree Royal filed for relief under Chapter 13 of the Bankruptcy Code on August 30, 2007. She scheduled an "anticipated earned income credit based on 2007 earnings, pro-rated (estimated)" on her Schedule B, and claimed it as exempt on Schedule C pursuant to 735 ILCS 5/12-1001(g)(1). Royal estimated that the portion of her 2007 earned income tax credit attributable to her pre-petition earnings would be $2,400.

According to Form B22C, Royal's current monthly income was $898, representing an annualized income of $10,776. For cases filed between February 1, 2007 and October 14, 2007, the median family income for a household of 3 people in Illinois

was $64,184.00.[1]  Royal's income was far below that median.   Since she is a "below-median" debtor, Royal did not use Form B22C to determine her "disposable income." Her applicable commitment period is 36 months.

According to Schedule I, her gross income was $1,250, less payroll taxes and Social Security contributions of $136.04.  She also received food stamps in the amount of $192.00.  On line 17, Royal wrote that she "will be looking for a higher paying job once her drivers license is reinstated," but no amended Schedule I has been filed.  Royal's net monthly income on Schedule I, therefore, is $1,305.96.  She listed monthly expenditures of $1,242 on her Schedule J.

Although she did not calculate "disposable income" according to Form B22C, Royal used the figures in her schedules to propose a Chapter 13 plan under which she would make 36 monthly plan payments of $63.  In addition, according to the special provisions section of her modified plan,

> Debtor will pay to the Chapter 13 trustee any federal income tax refunds received during the first three years of this plan; HOWEVER, this shall not include any earned income credit received by debtor.

Royal scheduled a priority debt of $1,025 and unsecured debt of $21,814.99.  The filed proofs of claim are slightly higher for priority debt and significantly lower for unsecured debt.  Unsecured creditors will be paid 10% of their claims.

---

[1]  Royal's Schedule I listed herself and three children as members of her household, but indicated on her Form B22C that her household size is three, rather than four.  The court need not inquire further, as Royal's income is below the median for a household of any size.

## DISCUSSION

I.   The Chapter 13 Trustee's Objection to Confirmation.

The court will consider first the Chapter 13 Trustee's oral objection to

confirmation of Royal's plan.  Since the Trustee objected to confirmation,

> the court may not approve the plan unless, as of the effective date of the
> plan -- . . .
>
> (B)   the plan provides that all of the debtor's projected disposable
>        income to be received in the applicable commitment period
>        beginning on the date that the first payment is due under the plan
>        will be applied to make payments to unsecured creditors under the
>        plan.

11 U.S.C. § 1325(b)(1)(B).

The basis for the Trustee's objection to confirmation is that by excluding the

portion of future refunds attributable to the earned income tax credit, Royal is not

committing all of her "projected disposable income" for the next three years to her

unsecured creditors.  Therefore, the starting point for the court's analysis is a

determination of what constitutes "projected disposable income."

A.   "Projected Disposable Income" is Derived From Current Monthly Income
and Disposable Income.

There has never been a definition of "projected disposable income" in the Code,

so the court will begin with the term that Congress did define -- "disposable income."

Prior to BAPCPA, the Code defined "disposable income" as "income which is received

by the debtor and which is not reasonably necessary to be expended -- (A) for the

maintenance or support of the debtor. . . ." 11 U.S.C. § 1325(b)(2) (2004). "In the

simplest pre-BAPCPA cases, determining the debtor's 'disposable income' available to

fund a plan entailed subtracting expenses listed in Schedule J from income listed in

Schedule I. . . ." In re Kibbe, 361 B.R. 302, 307 (B.A.P. 1st Cir. 2007).

According to 11 U.S.C. § 1325(b)(2), as amended in 2005:

For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended –

    (A)    (i)    for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

               (ii)    for charitable contributions . . . .

In order to determine the meaning of "disposable income" in a post-BAPCPA world, the court must first calculate "current monthly income received by the debtor."

"Current monthly income" is defined by the Code in 11 U.S.C. § 101(10A), a section that BAPCPA added to the Code:

(10A)   The term "current monthly income"--

    (A)    means the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on—

               (i)    the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

               (ii)    the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and

    (B)    includes any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents . . . but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and

- 4 -

> payments to victims of international terrorism (as defined
> in section 2331 of title 18) or domestic terrorism (as
> defined in section 2331 of title 18) on account of their
> status as victims of such terrorism.

According to the statute, then, we calculate a debtor's current monthly income

("CMI") by looking back at the average monthly income, whether taxable or not, that the

debtor receives, so long as it is derived during the six months prior to the filing of the

case. All income from any source is included, with the exception of Social Security

benefits, payments to war crimes victims and payments to terrorism victims.

Section 1325(b)(4) uses CMI to determine the "applicable commitment period"

for a Chapter 13 plan. The debtor's CMI is compared to the median income for

households of the same size and in the same state. If the debtor's CMI is higher than the

median ("above-median"), the applicable commitment period for that debtor's plan is five

years. If the debtor's CMI is lower than the median ("below-median"), the applicable

commitment period is three years. As discussed above, Royal is a below-median debtor.

Having used CMI to determine whether a debtor is above-median or below-

median, the Code then puts it to another use – the calculation of "disposable income" as

defined in § 1325(b)(2). While CMI excludes Social Security benefits, payments to war

crimes victims and payments to terrorism victims, "disposable income" excludes even

more categories of income: child support payments, foster care payments, and disability

payments for a dependent child. 11 U.S.C. § 1325(b)(2).

From the income calculation, the debtor also subtracts certain allowable expenses

-- the amount reasonably necessary to be expended for her support or a dependent's

support, for a postpetition domestic support obligation, and for charitable contributions.

For above-median debtors, § 1325(b)(3) instructs the debtor to determine "amounts

reasonably necessary to be expended" in accordance with § 707(b)(2)(A) and (B), and

Official Form 22C accommodates this instruction. Below-median debtors do not receive

such specific directions, and simply subtract "amounts reasonably necessary to be

expended." Generally, these are the expenses listed on Schedule J.

The amount remaining from CMI after the exclusion of certain categories of

income and after deduction of the funds expended on reasonable necessities is

"disposable income."

> **B.** Earned Income Tax Credits Are "Income" for Purposes of the Bankruptcy Code and Are Included in Calculating CMI as Well as Disposable Income.

The next question is whether earned income tax credits are even considered

"income," or whether they should be excluded from a debtor's CMI calculation. The

Code tells us that in order to calculate CMI, we must consider "the average monthly

income from all sources that the debtor receives . . . without regard to whether such

income is taxable income . . ." 11 U.S.C. § 101(10A).

Royal points out that "income is not synonymous with money receipts," and

indicates by way of example that money received pursuant to a loan is not considered

income. This example is disingenuous, ignoring the fact that a debtor who receives

money from a loan simultaneously incurs an obligation to repay that loan. There has

been no benefit to the debtor's bottom line, no increase in his assets. See In re Brown,

332 B.R. 562, 568 (Bankr. N.D. Ill. 2005) ("the refinance proceeds are accompanied by a

new loan to the debtor, which significantly offsets the apparent increase to the debtor's

balance sheet"). Receipt of an earned income tax credit, however, does provide a net

increase in the debtor's wealth.

Royal then suggests that the court consider whether the earned income tax credit is income for purposes of the Tax Code. She reasons that "if something is not even included in gross income under the Tax Code, because it is not considered to be income at all, that supports a finding that it should not be considered income for CMI either." Debtor's Memorandum in Support of Confirmation of Plan, at 14. She also suggests that the court take into consideration the traditional measure of income used by the Census Bureau, "money income," known as "MI." The earned income tax credit is not included in this traditional definition.

The court acknowledges that Royal's analogies are good ones. Nevertheless, analogies are not as persuasive as the plain language of the Bankruptcy Code. 11 U.S.C. § 101(10A) defines "current monthly income" as "income from all sources that the debtor receives . . . without regard to whether such income is taxable income." That statute specifically excludes certain payments to debtors, such as Social Security payments and payments to victims of war crimes, from the definition of CMI. It does not exclude the earned income tax credit. The Seventh Circuit has instructed us that "[t]he general rule of statutory construction is that the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded." Smith v. Zachary, 255 F. 3rd 446, 451 (7th Cir. 2001), citing 2A *Sutherland Statutory Construction* § 47.23. Earned income tax credits were not specifically excluded, which is an indication that they are meant to be included.

Similarly, when Congress drafted the earned income tax credit statute, it included a subsection which states that the credit would not be considered income for purposes of certain means-tested programs:

**(l)    Coordination with certain means-tested programs.**--For purposes of--

> **(1)**    the United States Housing Act of 1937,
>
> **(2)**    title V of the Housing Act of 1949,
>
> **(3)**    section 101 of the Housing and Urban Development Act of 1965,
>
> **(4)**    sections 221(d)(3), 235, and 236 of the National Housing Act, and
>
> **(5)**    the Food Stamp Act of 1977,
>
> any refund made to an individual (or the spouse of an individual) by reason of this section, and any payment made to such individual (or such spouse) by an employer under section 3507, shall not be treated as income (and shall not be taken into account in determining resources for the month of its receipt and the following month).

26 U.S.C. § 32 (2008). Each of these programs provides public assistance benefits, and if the earned income tax credit were counted toward income, the recipient might no longer be eligible for that benefit. As a result, Congress specifically excluded the credit from the definition of income in those statutes. The implication is that by failing to amend the earned income tax credit statute to exclude the credit from the definition of current monthly income added by BAPCPA, Congress intended for it to be <u>included</u> in the calculation of income.

For all of these reasons, the court concludes that the earned income tax credit is income under the Bankruptcy Code, and must be included in the calculation of a debtor's CMI. Since the earned income tax credit is not "child support payments, foster care payments, or disability payments for a dependent child," 11 U.S.C. §1325(b)(2), it is also included in "disposable income."

C.    <u>A Presumption Exists That a Debtor's "Projected Disposable Income" is Calculated From Her "Disposable Income," Although That Presumption May Be Rebutted.</u>

We now know that a prepetition earned income tax credit must be included in CMI, as well as in "disposable income," if it is received in the six months prior to filing the bankruptcy case. However, our inquiry is not complete. The Code does not require all of a debtor's "disposable income" to be applied to make payments to unsecured creditors if an objection to confirmation is raised. Instead, in order to overcome an objection to confirmation, a debtor must commit all "**projected** disposable income to be received in the applicable commitment period" to her plan for payments to unsecured creditors. 11 U.S.C. § 1325(b)(1)(B) (emphasis added). The Trustee's objection to confirmation turns on whether future earned income tax credits, received postpetition, are included in "projected disposable income."

In order to answer that question, the court must determine what effect the word "projected" has on the defined term "disposable income."

1.    <u>Bankruptcy Courts Have Proposed Two Different Interpretations of "Projected Disposable Income."</u>

Bankruptcy courts are split on how to define "projected disposable income." A minority of courts have held that the term "projected" means that Congress intended the court to take the historic disposable income figure and multiply it by the number of months in the applicable commitment period.

On the other hand, the majority of the bankruptcy judges who have considered the issue hold that projected disposable income is "based upon that income that debtor <u>will receive during the applicable commitment period</u> and not solely based upon the debtor's pre-petition income average." <u>In re Edmunds</u>, 350 B.R. 636, 646 (Bankr. D.S.C. 2006)

(emphasis added). See In re Frederickson, ___ F.3rd ___, 2008 WL 4693132 (8th Cir.

Oct. 27, 2008); In re Petro, 395 B.R. 369 (B.A.P. 6th Cir. 2008); In re Lanning, 380 B.R.

17, 24-25 (B.A.P. 10th Cir. 2007); Kibbe, 361 B.R. at 312;  In re Liverman, 383 B.R. 604,

610 (Bankr. D.N.J. 2008); In re Purdy, 373 B.R. 142 (Bankr. N.D. Fla. 2007); In re

Slusher, 359 B.R. 290, 297-298 (Bankr. D. Nev. 2007); In re Risher, 344 B.R. 833, 836

(Bankr. W.D. Ky. 2006); In re Hardacre, 338 B.R. 718, 723 (Bankr. N.D. Tex. 2006).

These courts have found that the term "projected" is a forward-looking term, in

contrast with the historic nature of the formula used for "disposable income."

Frederickson, 2008 WL 4693132, at *5; Kibbe, 361 B.R. at 312; Slusher, 359 B.R. at

297.  "The significance of the word 'projected' is that it requires the Court to consider

both future and historical finances of a debtor in determining compliance with §

1325(b)(1)(B)."  In re Jass, 340 B.R. 411, 416 (Bankr. D. Utah 2006).

Many of the courts in the majority camp specifically hold that the Form B22C

calculation creates a rebuttable presumption of "disposable income," which can be

supplemented by other evidence, if necessary, to determine "projected disposable

income."  See Purdy, 373 B.R. at 152 ("A Chapter 13 debtor's 'projected disposable

income,' as calculated by Form B22C, will be presumed accurate unless the debtor or

trustee can show that the numbers contained in Form B22C do not reflect a fair projection

of the debtor's budget into the future because the debtor has experienced a substantial

change in circumstances."); Jass, 340 B.R. at 418; In re May, 381 B.R. 498 (Bankr. W.D.

Pa. 2008).

These courts reason that Section 1325(b)(1)'s requirement that "projected

disposable income" be applied "as of the effective date of the plan" only makes sense if a

debtor's actual current income as of plan confirmation can be considered where a

significant change from the historical CMI calculation is shown. "[B]ecause the debtor's

disposable income must be used to fund the plan, the term 'projected' was intended to

signal a reexamination of income potential over the life of the plan." Kibbe, 361 B.R. at

308.

Furthermore, pre-BAPCPA bankruptcy courts had discretion to consider evidence

beyond Schedules I and J in determining projected disposable income, when

circumstances warranted.

> [A]lthough BAPCPA added a definition of "disposable income," it neither
> defined nor modified the pre-existing term "projected disposable income."
> ... Although the amendments to Section 1325 specify the formula by
> which to determine a debtor's median standing, as well as the monthly
> disposable income as of the date of the petition, they give us no reason to
> believe that Congress intended to eliminate the bankruptcy courts'
> discretion to deviate from an application of that formula where significant
> circumstances support doing so.

Lanning, 380 B.R. at 24 (footnote omitted). See, e.g., Edmunds, 350 B.R. at 646

("Congress intentionally used the phrase 'projected disposable income,' a phrase not

defined by the Bankruptcy Code but previously used by Congress in § 1325(b) prior to

the Reform Act . . .").

In Kibbe, a below-median debtor's Form B22C indicated she had no disposable

income, but her Schedules I and J reflected disposable income of $2,382. In affirming

the bankruptcy court's denial of confirmation, the Bankruptcy Appellate Panel for the

First Circuit held that Form B22C must be at least the starting point for any determination

of "projected disposable income." 361 B.R. at 312. It is not necessarily the ending point:

> [W]here, as here, the "current monthly income" amount is not true to the
> debtor's *actual* current income, courts should assume that Congress
> intended that they rely on what a debtor can realistically pay to creditors
> through his or her plan and not on any artificial measure. Attaching the

- 11 -

word "projected" to a historical calculation assumes, without justification, that a debtor's circumstances will not change after the date of case commencement or during the plan commitment period. Life informs otherwise.

Id. (emphasis in original.)

A minority of courts apply a more narrow interpretation of "projected disposable income." These courts have found that the BAPCPA amendments effectively eliminated the courts' discretion in determining "projected disposable income," rendering the Form B22C calculations as the proper -- and only -- method for calculating "projected disposable income." See Maney v. Kagenveama (In re Kagenveama), 541 F. 3rd 868 (9th Cir. 2008); In re Greer, 388 B.R. 889 (Bankr. C.D. Ill. 2008); In re Mancl, 381 B.R. 537, 541-542 (W.D. Wis. 2008); In re Alexander, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006).

The minority courts calculate "projected disposable income" by multiplying a debtor's disposable income, determined according to the formula set forth in Section 1325(b)(2), by the number of months in the applicable commitment period. "What is now considered 'disposable' is based upon historical data -- current monthly income derived from the six-month period preceding the bankruptcy filing. . . . [I]n order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) and does the math." Alexander, 344 B.R. at 749 (citations omitted). Under the minority approach, "[t]here can be no reason for Section 1325(b)(2) to exist other than to define the term "disposable income" as used in Section 1325(b)(1)(B)." Kagenveama, 541 F. 3rd at 873.

Even if this formula produces unintended results, the minority asserts that it is the job of Congress to amend the statute, and not of the courts to look for a different interpretation. Id. at 875. See In re Nance, 371 B.R. 358, 367 (Bankr. S.D.Ill. 2007)

("This Court acknowledges that its adoption of the strict, mechanical approach may lead to impractical results when a debtor's 'disposable income' calculated on Form B22C does not accurately reflect the debtor's actual income. . . . Unintended, impractical results are for Congress to address by amending the statute.").

> 2. The Proper Approach is to Find That Form B22C Creates a Rebuttable Presumption of "Projected Disposable Income."

In the opinion of this court, the results obtained by the mechanical test urged by the minority may be far worse than impractical. First, this rote application of Section 1325(b)(1)(B) erases any meaning from the statute's use of "projected."

> The Court must give meaning to the word "projected," as it obviously has independent significance. The word "projected" means "[t]o calculate, estimate, or predict (something in the future), based on present data or trends." Thus, the word "projected" is future-oriented. By definition under § 1325(b)(2), the term "disposable income" is oriented in historical numbers. By placing the word "projected" next to "disposable income" in § 1325(b)(1)(B), Congress modified the import of "disposable income."

Jass, 340 B.R. at 415-416 (footnote omitted).

Furthermore, if Congress wanted bankruptcy courts to multiply disposable income by the number of months in the applicable commitment period, it knew how to draft that instruction. There are numerous examples throughout the Bankruptcy Code of the Congressional ability to use the word "multiplied." 11 U.S.C. §§ 507(a)(5)(B)(i); 704(b)(2); 707(b)(2); 1322(d); 1325(b)(3) and (b)(4); and 1326(b)(3)(B)(ii). But Congress did not do so in § 1325(b)(1)(B), and that choice must have been deliberate, as "it is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." BFP v. Resolution Trust Corp., 511 U.S. 531, 537 (1994) (internal quotation marks omitted). When

Congress used the word "projected" rather than "multiplied," it must have intended a

result different than what simple multiplication would yield.

Second, projected monthly income must be a forward-looking concept because

Congress indicated that a debtor must commit "projected disposable income **to be**

**received in the applicable commitment period**." 11 U.S.C. § 1325(b)(1)(B) (emphasis

added).

> "To be received" indicates that Congress intended the courts to determine
> a debtor's disposable income based upon that income that debtor will
> receive during the applicable commitment period and not solely based
> upon the debtor's pre-petition income average. . . .  To give meaning to
> every word of the statute, the statute directs that debtors must determine
> projected disposable income in light of the income "expected to be
> received in the applicable commitment period beginning on the date that
> the first payment is due under the plan."

Edmunds, 350 B.R. at 646-647 (citation omitted).

As the Hardacre court explains, "[i]f Congress had intended that projected

disposable income for plan purposes be based solely on prepetition average income, this

language would be superfluous." 338 B.R. at 723.  This court cannot ignore the

Congressional instruction that debtors must commit the income "to be received" in the

applicable commitment period.  If "projected" disposable income were calculated merely

by multiplying historical disposable income by the number of months in the commitment

period, it would almost certainly be different – and often significantly different – from

the income "to be received" during that period.

The minority courts are concerned that "[i]f 'disposable income' is not linked to

'projected disposable income' then it is just a floating definition with no apparent

purpose." Kagenveama, 541 F. 3rd at 873 (quoting Alexander, 344 B.R. at 749).  Of

greater concern to this court is the minority's decision to ignore "to be received," a phrase that directly follows and consequently modifies "projected disposable income."

Of course, if a court does not give effect to any portion of a statute, it does so at its own peril. But this court's decision does not require turning a blind eye to the statutory definition of "disposable income." Instead, this court begins with the presumption that "projected disposable income" is calculated by using "disposable income" as defined in § 1325(b)(2). Only after an objection to confirmation is raised, and only if the debtor or the objector can rebut the presumption that the income the debtor expects to receive during the applicable commitment period is the same as the historical figure, should the court conduct an inquiry taking into account a debtor's circumstances as of the petition date and during the commitment period. See Lanning, 380 B.R. at 25 ("Where it is shown that Form B22C disposable income fails accurately to predict a debtor's actual ability to fund a plan, that figure may be subject to modification."); Jass, 340 B.R. at 416 ("Under the clear meaning of the statute, a debtor must propose to pay unsecured creditors the number resulting from Form B22C, unless the debtor can show that this number does not adequately represent the debtor's budget projected into the future.") (footnote omitted).

By using the Form B22C current monthly income calculation as a starting point rather than a figure fixed in stone, the majority is able to avoid the problems that may arise from a strict application of Section 101(10A). "For example, if 'current monthly income' as defined in Section 101(10A) applies, a debtor who anticipates a significant enhancement of future income is provided strong incentive to file chapter 13 as soon as possible," so that her plan commitment would be based on the lower income prior to

filing. Hardacre, 338 B.R. at 722. The "rebuttable presumption" approach allows courts

to impose their discretion where unwanted outcomes could result from a simple

mathematical application of Section 1325(b)(1)(B).

> This approach is not odd or unusual. It requires the use of a defined set of
> historical financial figures as a starting point for the determination of
> future finances. This approach is reasonable, so long as historical figures
> are not the exclusive determinants of those finances. Otherwise, projecting
> static historical figures over a future period would be like attempting to
> ascertain the future value of a company's stock based solely on the
> average of its stock price over the previous six months, without taking into
> account currently anticipated market trends. Using just the debtor's static
> historical income average and nothing else could lead to a projection
> unhinged from reality.

Slusher, 359 B.R. at 297.

Projections unrelated to reality could affect either unsecured creditors or debtors,

depending on the particulars of a debtor's situation. For this reason, the court cannot

make a results-oriented decision regarding the appropriate definition of "projected

disposable income," although it appears that the only Circuit-level decision to adopt the

minority position did exactly that.

In Kagenveama, Schedules I and J yielded disposable income of $1,523.89, while

Form B22C indicated that the debtor had negative disposable income. Using the means

test calculation, the debtor determined that she had no projected disposable income but

voluntarily proposed a plan that would pay unsecured creditors $9,444.38 over 3 years.

The Trustee brought an objection to confirmation.

The Circuit determined that it was bound by the disposable income calculation

made by Form B22C, and that the debtor had no projected disposable income. In

justifying its decision, the panel reiterated three times that while its conclusion might be

less favorable for unsecured creditors, its hands were tied by the language of the statute.

Any complaints about the statute should be taken up with Congress. Kagenveama, 541 F. 3rd at 875.

What the panel did not discuss -- whether deliberately or not -- is that its interpretation could just as easily produce an unfavorable result for a debtor. For instance, consider the debtor who loses her job on the eve of filing for relief under the Bankruptcy Code, a situation that occurs with some frequency. Perhaps she is able to obtain part-time work, in order to qualify as "an individual with regular income," but her new position pays much less than the old full-time job. She might have a significant amount of disposable income according to Form B22C. Yet her Schedule I would reveal the reality that, at least for the foreseeable future, the debtor's income is much lower. Should she be bound by the disposable income calculated on Form B22C, and be required to propose a plan for which there is no hope of making payments? Moreover, such a plan would be difficult to confirm, because it might not satisfy 11 U.S.C. § 1325(a)(6) ("the debtor will be able to make all payments under the plan and to comply with the plan").

A more realistic approach would be to presume that the disposable income number calculated by the means test formula is correct, "unless the debtor can show that this number does not adequately represent the debtor's budget projected into the future." Jass, 340 B.R. at 416 (footnote omitted). Allowing the debtor to present evidence that the means test figure is no longer valid provides her with the opportunity to propose a confirmable plan. The result is a more favorable environment for both debtors and unsecured creditors, with a mechanism available for debtors to pay their creditors what they can actually afford.

- 17 -

And this in turn serves the purpose that Congress envisioned BAPCPA would accomplish – keeping debtors in Chapter 13 and ensuring "that debtors repay creditors the maximum they can afford." H.R. Rep. No. 109-31 (Part 1), at 2, reprinted in 2005 U.S.C.C.A.N. 88, 89. See Frederickson, 2008 WL 4693132, at *5; Kibbe, 361 B.R. at 315 ("[A] reality-based determination of a debtor's capabilities to repay creditors . . . best preserves both the congressional formulation of § 1325(b) and the unaltered twin mandates of the Bankruptcy Code: a fresh start for the honest debtor and a uniform and equitable distribution to creditors.")

For all of these reasons, the court holds that "projected disposable income" is presumed to be the number calculated on a debtor's Form B22C. If a debtor, unsecured creditor or trustee can rebut that presumption, the court will consider all of the relevant facts and circumstances necessary to calculate the projected disposable income that the debtor expects to receive during the applicable commitment period.

D.    Application of the Rebuttable Presumption Definition of Projected Disposable Income to the Chapter 13 Trustee's Objection to Confirmation.

In this case, as a below-median debtor, Royal did not use Form B22C to calculate her disposable income. According to Schedule I, her net monthly income is $1,305.96. She listed monthly expenditures of $1,242 on her Schedule J. She then used the figures from her schedules to propose a Chapter 13 plan under which she would make 36 monthly plan payments of $63. Royal's plan has a special provision section of her modified plan, in which she indicates that

> Debtor will pay to the Chapter 13 trustee any federal income tax refunds received during the first three years of this plan; HOWEVER, this shall not include any earned income credit received by debtor.

The Chapter 13 Trustee objects to this plan on the grounds that by excluding her earned income credits, Royal is not committing all projected disposable income to be received in the applicable commitment period to make payments to her unsecured creditors.

The court begins its analysis with the presumption that Royal's projected disposable income is $63 per month. As discussed above, however, this is a rebuttable presumption. The Trustee argues that Royal's projected disposable income is actually higher because she is likely to receive a tax refund that includes an earned income tax credit. This credit is income under the Bankruptcy Code.

The Trustee has rebutted the presumption that Royal's projected disposable income is only $63 per month, because her income is higher than scheduled. The court finds that Royal's plan must provide that the earned income tax credits she receives during the applicable commitment period are applied to make payments to her unsecured creditors.

Having made that finding, however, the court notes that the disposable income available to Royal's unsecured creditors depends not only on her income, but also on the amount of expenses she claims on Schedule J. The expenses Royal scheduled are extremely tight for a household with at least two dependent children, all over the age of 11.

Royal listed monthly expenditures of $1,242 on her Schedule J. While certain expenses could be reduced (e.g., $100 for telephone as well as $60 for cell phone, $33 for auto insurance although no car is scheduled), others appear to verge on unrealistically optimistic (e.g., $400 for food, $8 for transportation). As should be obvious from the discussion in Part I(C)(2), this court prefers to make decisions that are grounded in

- 19 -

reality. The court strongly suspects that Royal defers certain expenses, those that can wait until she receives her yearly earned income tax credit. The court would not look unfavorably upon an amended Schedule J that reflects Royal's actual expenses in the 14 months since she filed the original Schedule J.

The court also suggests that any amended plan incorporate a provision providing for a stepped-up payment to the Chapter 13 Trustee only at the time the earned income tax credit is actually received, rather than spread throughout the year. The court will not assume that an earned income tax credit received in April or May could be saved to assist in making plan payments the following January.

## II.    The Chapter 13 Trustee's Objection to Claim of Exemption.

The court will also resolve the Trustee's objection to Royal's claim of exemption in her anticipated earned income tax credit. Royal claimed the portion of her anticipated earned income tax credit attributable to prepetition income as 100% exempt pursuant to 735 ILCS 5/12-1001(g)(1). That statute provides that a debtor's "right to receive: (1) a social security benefit, unemployment compensation, or public assistance benefit" is exempt from judgment.

The Chapter 13 Trustee asserts that an earned income tax credit is not a social security benefit, unemployment compensation or a public assistance benefit, and therefore it is not exempt.

In her response, Royal points out that the three reported Illinois cases to have addressed this issue all held that an earned income tax credit is a "public assistance benefit" that is exempt under Illinois law. In re Ray, 1999 WL 621524, at *3 (Bankr. N.D. Ill. June 23, 1999) ("common sense compels this court to find that earned income tax credits are exempt as 'public assistance benefits' under Illinois law"); In re

- 20 -

Brockhouse, 220 B.R. 623 (Bankr. C.D. Ill. 1998); In re Fish, 224 B.R. 82 (Bankr. S.D.

Ill. 1998).

The earned income tax credit is "a public benefit delivered through the tax

system." Jennifer E. Spreng, When "Welfare" Becomes "Work Support": Exempting

Earned Income Tax Credit Payments in Consumer Bankruptcy, 78 AM. BANKR. L.J. 279,

280 (Summer 2004) ("Spreng").  Spreng quotes the report of the Senate Finance

Committee in describing the purpose of the credit:

> [It] will provide relief to families who currently pay little or no income
> tax. These people have been hurt the most by rising food and energy costs.
> Also, in almost all cases, they are subject to the social security payroll tax
> on their earnings. Because it will increase their after-tax earnings, the new
> credit, in effect provides an added bonus or incentive for low-income
> people to work, and therefore, should be of importance in inducing
> individuals with families receiving Federal assistance to support
> themselves.

Spreng at 291, quoting S. Rep. No. 94-36, reprinted in 1975 U.S.C.C.A.N. 54, 64.

Unlike some public benefits, the earned income tax credit is only available to

taxpayers who have earnings.  The recipient must file a tax return and the credit is then

applied to reduce the amount of federal income tax due.  If the amount of the credit

exceeds the amount of tax the recipient owes, the excess is paid directly to the taxpayer.

The payment of that excess is the amount that Royal seeks to exempt.  According

to her 2006 federal income tax return, Royal's total income was $8,836 and her tax

liability was $0.  Since $367 was withheld from her paychecks, she received a $50

telephone excise tax credit, and her earned income credit was $3,530, Royal was entitled

to an income tax refund for 2006 of $3,947.  She estimated that she would receive

approximately the same credit for 2007.

The Chapter 13 Trustee did not reply to any of Royal's arguments regarding whether her earned income credit is exempt, even though "[i]n any hearing under this [Federal R]ule [of Bankruptcy Procedure], the objecting party has the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr. P. 4003(c). Instead, the Trustee argued that even if the earned income tax credit is exempt, that does not rule out considering it to be disposable income that should be devoted to the plan.

The Trustee's concern likely stems from those few pre-BAPCPA cases that held that because exempted property is not liable for prepetition debts under 11 U.S.C. § 522(c), proceeds of exempt assets were not disposable income that must be applied to payments to unsecured creditors.  See In re Claude, 206 B.R. 374, 378-379 (Bankr.W.D. Pa. 1997) ("A court in the Ninth Circuit held without discussion that income exempt from taxes under state law is excluded from disposable income. . . .  One panel of the [Eighth] circuit found in a Chapter 12 case that income exempt from attachment by creditors under state law is not disposable income.") (citations omitted).

After BAPCPA, however, there should be no such concern.  "[T]he term 'disposable income' means current monthly income received by the debtor." 11 U.S.C. § 1325(b)(2).  Although both the disposable income definition and the current monthly income definition exclude certain items, exempt income is _not_ excluded.  "With the enactment of BAPCPA in 2005, the split of authority over whether or not exempt assets are to be included in the calculation of disposable income has been statutorily answered by Congress." In re Waters, 384 B.R. 432, 436 (Bankr. N.D.W.Va. 2008).  Moreover, the court concluded in Part I(B) that an earned income tax credit is included in disposable income, a conclusion that is unaffected by its exemptible status.

Although the earned income tax credit's classification as disposable income is not affected by a ruling on the Trustee's objection to exemption, the court will resolve the objection. The court has read the three cases on point, reviewed the purpose of the earned income tax credit, and considered the matter under the appropriate burden of proof. In addition, the court is mindful of the Seventh Circuit's instruction that when it is open to interpretation, an exemption statute should be interpreted in a manner that favors the debtor. Matter of Barker, 768 F. 2nd 191, 196 (7th Cir. 1985) ("[T]his circuit and the courts in Illinois have consistently held that personal property exemption statutes should be liberally construed in order to carry out the legislature's purpose in enacting them - to protect debtors.")

For all of these reasons, the court finds that an earned income tax credit is a "public assistance benefit" and consequently is exempt under Illinois law. The Trustee's Objection to Exemption is overruled.

## CONCLUSION

For all of the reasons stated above, the court sustains the Chapter 13 Trustee's oral objection to confirmation and overrules the Objection to Claim of Exemption.

Date:     NOV - 7 2008

PAMELA S. HOLLIS
United States Bankruptcy Judge